J-A04015-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: TERMINATION OF PARENTAL RIGHTS TO B.M.B., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF M.M.S., MOTHER | No. 1337 MDA 2022 |

Appeal from the Order Entered August 15, 2022
In the Court of Common Pleas of Lebanon County
Orphans' Court at No.: 2022-00567

BEFORE:  STABILE, J., DUBOW, J. and McCAFFERY, J.

MEMORANDUM BY STABILE, J.:  **FILED: MARCH 27, 2023**

Appellant, M.M.S. ("Mother"), appeals from an order that terminated involuntarily her parental rights to her minor son, B.M.B. ("Child").  We affirm.

Mother was born in 1989 and is the natural mother of Child, who was born in 2021.  On February 9, 2021, shortly after Child's birth, Lebanon County's Child and Youth Services ("Agency") was granted emergency custody of Child due to parental substance abuse.

Child never lived with Mother nor B.L.B. ("Father").  Child is living with his biological half-sibling in a foster home.  Both children have the same genetic condition that the foster mother ("Foster Mom") is equipped to handle. On March 1, 2021, an adjudication hearing was held, and Child was found to be a "dependent child" under 42 Pa.C.S.A. § 6302(1) and 6302(10) because Mother was in jail from December 23, 2020, to May 17, 2021, there was

parental substance abuse, and Mother had her parental rights to another child involuntarily terminated on December 3, 2018. Notably, Mother was in jail during the termination hearing held on August 15, 2022, and she also voluntarily terminated her parental rights to her first two children.

At first, the Agency had regular contact with the parents. Letters were sent to the parents regarding their goals and their progress. Mother had fifteen goals established by the Child Permanency Plan for Child, including regular visitation with Child and drug and alcohol testing.

On August 30, 2021, a review hearing took place, and the parents' progress on their goals was found to be minimal. On January 10, 2022, another review hearing took place. The parents' progress was found to be moderate; Mother completed an in-patient program. At a May 9, 2022, review hearing, the parents' progress was found to be minimal; Mother was unsuccessfully discharged, had disappeared, was reincarcerated, and was in jail at the time of the review.

On June 30, 2022, the Agency filed a petition for involuntary termination of parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8). The original permanency goal in Child's Permanency Plan was either to return him home or to conduct an adoption, but the Agency later determined that adoption should be the only goal.

On August 15, 2022, the court convened an evidentiary hearing on the Agency's petition. The evidence presented during the hearing demonstrated that Mother was incarcerated from December 23, 2020 through May 17, 2021.

Upon her release, Mother went to the Conewago Snyder Halfway House until June 2, 2021. She returned to the Lebanon County Correctional Facility at that time and remained there until June 29, 2021 when she went to the Nicholas House, a halfway house. On July 10, 2021, she was discharged unsuccessfully for violating Nicholas House's curfew policy. Her whereabouts were unknown between July 10, 2021 and July 29, 2021. On July 29, 2021, she returned to Lebanon County Correctional Facility on a probation violation, and she remained there until October 6, 2021. At that point, she attended the Pyramid Healthcare detox inpatient program, which she successfully completed on December 3, 2021. On December 13, 2021, she returned to Lebanon County Correctional Facility until an appropriate stepdown placement could be found. On February 8, 2022, she went to the Grace House program, but on February 28, 2022, she was discharged unsuccessfully for failing to follow program rules. Between February 28, 2022 and March 3, 2022 Mother was in the Lebanon County Correctional Facility. On March 3, 2022, she was released on a home plan, but by March 5, 2022, her whereabouts were unknown. On April 28, 2022, she was reincarcerated for probation violations of drug use and absconding. She was incarcerated from April 28, 2022 until the evidentiary hearing on August 15, 2022.

The Agency sent Mother follow-up letters about her goals, gave Mother useful information about resources, and provided notice of Child's appointments. Nevertheless, Mother struggled to complete all of her goals. Mother was not actively involved in Child's placement, because she

consistently was in jail or an in-patient program for multiple reasons, including but not limited to probation violations and evading probation. Mother participated in only four in-person visits with Child on July 9, 2021, December 9, 2021, March 17, 2022, and March 22, 2022 and one visit on July 9, 2021 by video. A fifth in-person visit was canceled due to transportation issues. Mother provided no proof of completing a parenting course even though the Agency informed her where to go for classes. Mother testified that she started parenting essentials on a tablet and that she did not even know this was a goal at one point. Mother testified that she had prepared to do classes when she was in treatment but was reincarcerated.

Mother underwent a mental health evaluation on October 14, 2021 and was recommended to complete out-patient treatment. She failed to complete out-patient therapy. Mother underwent drug and alcohol evaluation on January 13, 2022 but only partially completed her recommended treatment. The Agency was concerned about Mother's substance abuse but was never able to test her for drug use. Mother did not have stable housing and did not have an address for parole.

Mother did not attend any of Child's medical appointments, and she evaded parole authorities while under supervision.

With regard to the bond between Mother and Child, Mother was in jail or treatment during most of Child's life. While incarcerated, Mother wrote letters to the Agency's caseworker asking for updates about Child and pictures of Child. In addition, while incarcerated, Mother sent Child some letters and

drawings. When she was not incarcerated, however, Mother did not ask the caseworker for updates or send Child letters. Child did not recognize Mother on the few occasions that Mother visited him.

Child has physical limitations, including respiratory distress and possible sepsis. Child also has a poor swallow. Child is now a patient of Taylor Swingle ("Swingle") at Penn State Health. The first session was in July 2021, and Swingle sees Child about once each week. Child appears to have delayed development and is receiving physical, occupational, and speech therapy. Swingle is helping Child with gross motor skills, and the goal is to help him catch up to his milestones. Typically, Foster Mom was present for these visits and was very involved in Child's care. Mother did not attend any appointments.

During the termination hearing, the supervising caseworker testified that terminating the parental rights of Mother and Father is in the best interest of Child. Foster Mom is an adoptive resource. Child calls Foster Mom "Mom" and calls the foster father ("Foster Dad") "Dad." While Child has issues with walking, developmental delays, eczema, and wears glasses because of an issue with eyes, he is currently receiving early intervention services and therapies. Foster Mom has usually been present for these visits and is very involved in Child's care. Overall, Child is doing well and is living with his biological half-sibling, and Foster Mom can take care of both of them.

Mother testified that she was sorry her drug addiction contributed to creating this situation and stated that she plans to stay away from people,

places, and things that are bad influences. The court found, however, that Mother did not have a workable plan in place regarding her caring for Child at the time of the hearing even though Child had been in placement for eighteen months. Mother was not even sure how long she would be in jail this time but did know her maximum date was in December of 2022. The court found that Mother failed to provide any credible testimony concerning her conduct.

On August 15, 2022, the court ordered involuntary termination of Father's and Mother's parental rights. Mother filed a timely appeal, and both Mother and the court complied with Pa.R.A.P. 1925. Father did not appeal.

Mother raises the following issues on appeal:

1. Whether [Agency] met its burden to establish [Mother] evidenced a settled purpose of relinquishing parental claim to the child?

2. Whether [Agency] met its burden to establish [Mother] refused or failed to perform parental duties based upon the circumstances in which she found herself?

Mother's Brief at 4.

We consider these claims together, mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously

- 6 -

emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

Section 2511 of the Adoption Act, 23 Pa.C.S.A. § 2511, which governs involuntary termination of parental rights, requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007).

In this case, the court terminated Mother's parental rights involuntarily pursuant to Sections 2511(a)(1), (2), (5), and (8). We need only agree with the court as to any one subsection of Section 2511(a) in order to affirm.[1] ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we consider

---

[1] Mother waived any challenge regarding Section 2511(b) by failing to include it in her statement of questions involved and concise statement of errors complained of on appeal. ***See In re M.Z.T.M.W.***, 163 A.3d 462, 466 (Pa. Super. 2017) ("[I]ssues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived."). Mother also failed to develop any such claim in the argument section of her brief. ***Id.*** at 465-66 ("[T]his Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority"). Thus, we review only the court's decision to terminate parental rights pursuant to Section 2511(a).

the court's decision to terminate pursuant to Section 2511(a)(1), which provides as follows:

> The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

Mother argues that "in spite of her incarceration, treatments and halfway houses, [she] utilized all reasonable means available to her to maintain a relationship and a place in [C]hild's life. Both [the Agency] and the [c]ourt indicate that [Mother] did what she could, based upon the circumstances being encountered." Mother's Brief at 13-14.

The evidence of record demonstrates, however, that Mother failed to perform parental duties during the first six months of 2022, the six-month period immediately preceding the Agency's termination petition. Indeed, as the trial court observed, Mother has failed to perform parental duties since Child was born in early 2021. Mother struggled to complete all of her goals, failed to attend any of Child's medical appointments, visited Child only four times, repeatedly failed to complete rehabilitation programs, and has repeatedly been incarcerated. She has been in jail or drug treatment during the majority of Child's life. Although Mother wrote some letters to Child while in jail, she stopped contact when not in jail. While she was incarcerated, she

contacted the Agency's caseworker for updates on Child, but she failed to contact the caseworker for updates when not incarcerated.

Although Mother's incarceration was not conclusive on whether she abandoned Child, her responsibilities were not tolled during her incarceration. The evidence shows that Mother lacked any plan and follow-through, and she failed to utilize the resources that were available to her to form a close relationship with Child despite her affirmative duty to do so.

Mother's chief argument is that she has done as much as she can while in prison, and has refused to give up her parental rights. The court had ample reason not to believe Mother's claim. Her pattern of drug abuse, failure to rehabilitate herself, failure to meet with Child except for a handful of occasions, and failure to take any role in Child's upbringing and nurturing evinces a failure to perform parental duties for six months (and more) preceding the Agency's termination petition.

For these reasons, we hold that the trial court properly determined that the Agency fulfilled its burden of proof under Section 2511(a)(1). We therefore affirm the order of involuntary termination.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/27/2023